Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3142 | **DATE** | 6/3/2002 |
| **CASE TITLE** | Ernest Cotton vs. City of Chicago | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the attached memorandum opinion and order, defendant's motion for summary judgment is GRANTED [15-1]. This action is closed.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN - 6 2002 | |
| | Notified counsel by telephone. | | date docketed | 24 |
| X | Docketing to mail notices. | | 15 | |
| X | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| klb (lc) | courtroom deputy's initials | 02 JUN -5 PM 6:31 U.S. DISTRICT COURT CLERK 01-03-0371 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

ERNEST COTTON, )
)
       Plaintiff, )
) No. 01 C 3142
  v. )
) HONORABLE DAVID H. COAR
CITY OF CHICAGO, a Municipal )
Corporation, )
)
       Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Ernest Cotton ("Cotton" or "plaintiff"), a firefighter with the City of Chicago Fire Department ("CFD"), has brought a civil rights action pursuant to Title VII of the Civil Rights Act of 1964, as amended by 42 U.S.C. § 2000e-2(a), et seq. ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and 42 U.S.C. § 1983 ("Section 1983"), alleging that the Defendant, City of Chicago ("City" or "defendant"), intentionally engaged in discrimination by suspending him because of his race. Before this court is defendant's motion for summary judgment in its favor pursuant to Fed. R. Civ. P. 56. Defendant argues that it is entitled to summary judgment because the plaintiff can establish neither intentional discrimination nor municipal liability under Section 1981 and 1983. For the reasons set forth below, defendant's motion for summary judgment is granted.

I.   **Summary Judgment Standard**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

24

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Michael v. St. Joseph County, et. al, 259 F.3d 842, 845 (7th Cir. 2001). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995).

Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Michael, 259 F.3d at 845; Albiero v. City of Kankakee, 246 F.3d 927, 932 (7th Cir. 2001). To successfully oppose the motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, see Wolf v. Northwest Ind. Symphony Soc'y, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion, see Albiero, 246 F.3d at 932. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552-53. A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250, 106 S. Ct. at 2511.

II. **Statement of Facts**

Cotton, has been employed as a firefighter by the City of Chicago's Fire Department ("CFD") since July 18, 1994. Having completed training at the academy, and following a short stint with the CFD's Engine One, plaintiff was assigned to Engine 74, located at 10615 South Ewing, Chicago, Illinois.

Since at least April 1992, the CFD has had in effect General Orders ("General Orders") and the Code of Professional Conduct ("the Code") which govern the behavior of its employees. Among other things, the Code provides guidelines for the imposition of discipline. Such discipline, according to the Code, "shall be used toward the goal of correcting behavior or performance which does not meet departmental standards" and is "applied...without prejudgment or personal bias." Further, the Code specifies that CFD discipline "shall be fitting to both the nature and severity of the offense." The Code's disciplinary guidelines are progression-based, in that the type and manner of discipline "shall increase in severity with repetition of identical or closely related offenses." The Code specifically requires that "[p]ersonal conduct, both on and off duty, must be such that preserves the reputation of the department and the confidence of the public in whose service their duty is founded." The Code further specifies that "[a]buse or harassment of any member by another, including sexual or racial harassment is strictly prohibited and will be disciplined appropriately, as will any resort to physical violence against any member, or member of the public." In addition, the Code provides that "[w]here performance of duties or conduct does not meet acceptable standards, the department shall act to correct such performance or behavior through appropriate measures including discipline." The Code states that is should be enforced regardless of a firefighter's race.

Plaintiff received copies of both the Code and General Orders, and understood that firefighters are expected, pursuant to the Code, to maintain the same "standard of professionalism" both on and off-duty. In 1994, plaintiff received an oral reprimand for his failure to maintain his on-duty studies and failure to follow a direct order from a superior officer. On January 14, 1999, a civilian (Kenny Rogers) complained that plaintiff had repeatedly threatened Kenny Rogers and his acquaintances on or about August 23, 1998. This report was subsequently investigated by the city of Chicago's Office of Internal Investigations ("OII"), formerly referred to as the Internal Affairs Division ("IAD"), and found to have merit. Information pertinent to this investigation included the statements of various witnesses, one a Chicago Police Officer and another a school teacher, who had personally witnessed plaintiff threatening the complainant with bodily harm. As a result of this IAD investigation, plaintiff was issued a written reprimand for violations of Rule 2.01, which prohibits conduct in violation of the Code; Rule 2.05, which prohibits the use of coarse, profane, or insolent language or showing disrespect to, or willful maltreatment toward any member of the Department or any other person; and Rule 2.13, which prohibits the commission of any act prohibited by City of Chicago Personnel Rule XVIII, or any order or directive of the CFD.

On September 14, 1999, Kenny Rogers again complained about Cotton to then IAD investigator Louis F. Cuddy ("Cuddy").[1] Specifically, Rogers reported that, while stopped at the intersection of 84th Street and Ashland Avenue, plaintiff drove his vehicle alongside him and exclaimed "What's up, punk?" Rogers then stated that plaintiff exited his vehicle and

---

[1] Cuddy's case notes say there was only a threat but in his deposition he stated that Rogers was physically assaulted by Cotton.

-4-

approached him. Upon reaching the driver's side of Rogers' vehicle, plaintiff threw a punch at him through the open window. Cuddy, who had also been assigned to investigate Rogers' earlier claims of harassment, was subsequently assigned to and began an investigation into the veracity of Rogers' latest allegations. As the assigned IAD investigator, it was Cuddy's responsibility to investigate allegations of wrongdoing and assess their credibility. If, based upon the results of his investigation, these allegations were sustained, Cuddy's findings would go to "higher authorities." According to Rogers, the entire incident was witnessed by an ice cream delivery driver, George Ellis ("Ellis"). Ellis subsequently told Cuddy that he had seen the black male driver of a Jeep exit his vehicle at the intersection of 84th Street and Ashland Avenue and, according to Cuddy's notes, proceed to "push his hand and arm through the driver's side of Rogers' auto." Rogers faxed Cuddy a schematic of the intersection where the assault took place. Cuddy subsequently confirmed that a police report was filed by Rogers. Cuddy confirmed that a black male driving a vehicle registered to Cotton was the perpetrator of a physical assault on Rogers the morning of September 14, 1999.

Plaintiff admits that he was driving his 1996 black Jeep Cherokee on September 14, 1999, the day that Rogers was assaulted. Plaintiff further admits that the official CFD log-book for that day has plaintiff being relieved from duty at 7:00 a.m. Plaintiff, however, contests the log-book's accuracy, and insists that he was not relieved until approximately 7:45 a.m. After leaving Engine 74, plaintiff claims that he drove directly to Hammond, Indiana, to purchase gasoline and groceries. Plaintiff admits that it is not uncommon for him to get home from Engine 74 by way of Ashland Avenue and 84th Street, the intersection where Rogers was assaulted on September 14, 1999.

Cuddy recommended that IAD sustain Rogers' complaint, finding that there was merit to his allegations of an assault. Cuddy, who conducted well over one hundred IAD investigations during his tenure with that Office, indicates that nothing associated with his two investigations into plaintiff's behavior struck him as unusual or otherwise out of the ordinary. Cuddy further indicates that he has no vested interest in plaintiff's personal or professional life. Cuddy remains convinced that Rogers' clams of an assault were true. Based upon the results of the IAD investigation, plaintiff was issued a six-day suspension for his behavior.

Plaintiff filed a charge with the EEOC on November 9, 2000, alleging that he had been discriminated against "because of [his] race, Black, in violation of Title VII." An administrative Right to Sue letter was issued on January 31, 2001, and plaintiff filed the instant federal claim on May 1, 2001. His first amended complaint was filed on August 30, 2001. Specifically, plaintiff alleges that his six-day suspension was improperly motivated, having been issued by a "bias[ed]" IAD that "tried to set [him] up." The IAD, according to plaintiff, is "not fair across the board" and "pick and choose" who receives discipline. The IAD investigations, plaintiff says, were nothing more than a "witch hunt," consisting of "manufactured evidence," which leads him to believe that the IAD "had it out for me, for whatever reason." Specifically, plaintiff points to "a vigilante group of investigators" who targeted him as "an easy mark" for discipline. One of these purportedly tainted investigators is said to be Louis Cuddy, who plaintiff says "impos[ed] on my privacy" by interviewing potential witnesses at plaintiff's athletic club. Plaintiff points to single statement Cuddy allegedly made while serving him with a Notice of Investigation in 1999 as specific proof of discriminatory intent. According to plaintiff, "[Cuddy} stated that [Cotton] shouldn't have this job, [Cuddy's] son should have this job." Cuddy denies ever making such a

statement. Plaintiff admits that "I really wasn't trying to hear what he had to say at the time. I really...just wanted him to leave me alone..." Apart from the alleged quote, which plaintiff interprets as a racial slight, plaintiff admits that neither Cuddy nor Cuddy's IAD supervisor, Steven Malec, demeaned him racially during the IAD investigation.

Plaintiff admits he does not have any documentary evidence to support his allegation that IAD went after him "vigilante style." Nor does plaintiff have first-hand knowledge of any other CFD employee who has been the subject of unlawful discrimination. While plaintiff has allegedly read about and heard rumors of similarly situated white firefighters receiving less severe discipline (or none at all), he has no evidence that these presumed disparities actually exist. Or, if they do, that these disparities are racially related. Rather, plaintiff suggests that "it just sounds suspicious." As a result of his six-day suspension, plaintiff forfeited approximately $680 in salary, but claims no other documented loss or injury as a result of this discipline except legal fees associated with the instant action. Plaintiff claims no physical disability and has incurred no medical, psychological or counseling-based expenses as a result of being suspended. Plaintiff further admits that the terms and conditions of his employment, including subsequent scheduling and salary increases, have been unaffected by the imposition of his six-day suspension.

### III. Discussion

Cotton alleges that the CFD violated Title VII of the Civil Rights Act of 1964. Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race or color." 42 U.S.C. §

2000e-2(a)(1). Two methods exist for Cotton to satisfy his burden of proof: by direct evidence that racial discrimination motivated the CFD's decision to suspend him, or by the indirect, burden-shifting method of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817 (1973), and Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248, 256, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981).

Cotton's allegation centers on his assertion of indirect evidence of racial discrimination. Applying the McDonnell Douglas-Burdine burden shifting test, Cotton first must establish a prima facie case of racial discrimination by a preponderance of the evidence. Sample v. Aldi, Inc., 61 F.3d 544, 547 (7th Cir. 1995). Without a prima facie case, Cotton cannot withstand summary judgment. See Gilty v. Village of Oak Park, 919 F.2d 1247, 1250 (7th Cir. 1990). To do so, he must show (1) he is a member of a protected class, (2) his job performance met CFD's legitimate expectations, (3) he suffered an adverse employment action, and (4) that another, similarly situated but not of the protected class, was treated more favorably. Stockett v. Muncie Indiana Transit System, 221 F.3d 997, 1000-02 (7th Cir. 2000); Geier v. Medtronic, Inc., 99 F.3d 238, 241 (7th Cir. 1996).

Once a plaintiff has made this showing, there is a presumption that he was discriminated against, and the employer must come forward with a legitimate, non-discriminatory reason for the employment action. See McDonnell Douglas, 411 U.S. at 802; Lenoir v. Roll Coater, Inc., 13 F.3d 1130, 1133 (7th Cir. 1994). At this stage, the employer need not prove that it was actually motivated by the proffered reason. Rather, an employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Burdine, 450 U.S. at 257. Once the defendant has met

this burden of production, the plaintiff must prove by a preponderance of the evidence that the reason offered by the defendant is merely a pretext for discrimination. Id. at 253; Plair v. E.J. Brach & Sons, 105 F.3d 343, 348 (7th Cir. 1997). While the McDonnell Douglas approach is often called a "burden shifting" method of proof, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253.

In this case, it is undisputed that Cotton is a member of a protected class and that he suffered an adverse employment action - the six-day suspension. Defendant argues, however, that Cotton cannot make out a prima facie case of discrimination because Cotton has not proven that he was meeting the legitimate expectations of his employer and is unable to identify a similarly situated employee, not a member of plaintiff's protected class, who was treated more favorably.

Defendant first argues that Cotton was not meeting the employer's legitimate expectations because he has been disciplined three times, including the suspension which is the subject of this lawsuit. Cotton argues that his long and relatively unblemished service record with the CFD is sufficient to establish this second element of his prima facie case for summary judgment purposes. Because a plaintiff's burden to establish a prima facie case under Title VII is not onerous, the Seventh Circuit has recognized that a plaintiff may create a material dispute about his own abilities by simply attesting that he was performing satisfactorily. See Roberts v. Separators, Inc., 172 F.3d 448, 451 (7th Cir. 1999) (assuming that plaintiff could establish this element and moving on to related pretext analysis) (citing Gustovich v. AT & T Communications, Inc., 972 F.2d 845, 848 (7th Cir. 1992) (distinguishing between the use of such

"self-serving" evidence at the prima facie case stage and at the pretext analysis)); see also Hong v. Children's Memorial Hosp., 993 F.2d 1257, 1263 n. 5 (7th Cir. 1993) (citation omitted) ("We have long recognized that an employer's acceptance of work without express reservation is sufficient to show that the plaintiff was performing satisfactorily for the purpose of shifting the burden of proof."). Viewing the evidence in the light most favorable to the plaintiff, Cotton has come forward with sufficient evidence of his satisfactory performance to create an issue for trial. The record contains Cotton's statement that he has received all scheduled salary increases. This allows the inference that he was satisfactorily performing his job responsibilities.

The defendant next argues that summary judgment is appropriate because the plaintiff has not and cannot present a single instance where a similarly-situated peer outside of his protected class received more favorable treatment. Plaintiff listed a series of names during his deposition of individuals who, he believed, had not been disciplined despite allegedly having committed various off-duty crimes. Plaintiff, however, has no first-hand knowledge and apparently gleaned this information through media reports and the rumor mill. Without more it is impossible for this court to assess whether the named individuals are in fact similarly situated to the plaintiff. It is well-established that uncorroborated, conclusory statements that similarly-situated co-workers were treated differently are insufficient to satisfy the "similarly-situated" prong of the prima facie case. See Oest v. Illinois Dept. of Corrections, 240 F.3d 605, 614 (7th Cir. 1998); Kizer v. Children's Learning Center, 962 F.2d 608, 612-13 (7th Cir. 1992); Hayes v. Navistar Financial Corp., No. 95 C 5464, 1997 WL 43248, *5, 1997 U.S. Dist LEXIS 835, *14 (N.D. Ill. Jan 24, 1997). Plaintiff argues that the reason he has no evidence to support his allegations is that the defendant objected to his request to produce disciplinary records for off duty conduct. When

faced with the defendant's objection, however, the plaintiff did not file a motion to compel the defendant to respond to its interrogatory. Thus, the failure to obtain information is ultimately the fault of plaintiff. Plaintiff has failed to come forth with sufficient evidence to make out its prima facie case.

Even if plaintiff could establish a prima facie case of race discrimination, he cannot show that the defendant's articulated reasons for imposing the six-day suspension are pretextual. To show pretext, the plaintiff must prove that the real reason for the challenged employment action differs from defendant's articulated justification. Plaintiff can meet this burden by proving either that defendant was more likely motivated by an unlawful purpose or that its justification is unworthy of credence. See Rush v. McDonald's Corp., 966 F.2d 1104, 1115 (7th Cir. 1992). The relevant inquiry is not into the degree of fairness or wisdom associated with the challenged decision, but whether defendant did, in fact, honestly believe in its articulated reason for acting. See McCoy v. WGN Continental Broadcasting Co., 957 F.2d 368, 373 (7th Cir. 1992). It is not this Court's responsibility to sit as some "superpersonnel department that reexamines an entity's business decisions and reviews the propriety of the decision." See Stewart v. Henderson, 207 F.3d 374, 378 (7th Cir. 2000).

Plaintiff was investigated for assault following a phone call to Internal Affairs from Rogers. Plaintiff argues that there are inconsistencies between Cuddy's case log, case report, the police report filed by Rogers, and Cuddy's deposition testimony which show that the investigation was conducted in such a poor manner that a detached observer could infer that it was not the legitimate reason for defendant's decision to suspend the plaintiff. Roger's statement and that of a corroborating witness, who identified Cotton's car and described the

-11-

incident, put Cotton at the scene. It was certainly reasonable for Cuddy to believe the testimony of Rogers and a disinterested witness over Cotton. Cotton also makes much of the fact that the firehouse occurrence log indicates that he was signed out at 7:00 a.m., whereas he claims to have left Engine 74 at approximately 7:55a.m. However, it was perfectly reasonable for Cuddy to accept the time clearly noted on the occurrence log, given both Rogers' and Ellis' witness statements concerning time. Plaintiff "has not adduced any evidence specifically refuting" the CFD's reason for suspending him. See Mills v. First Federal Savings & Loan Ass'n, 83 F.3d 833, 845 (7th Cir. 1996). Instead plaintiff has merely criticized the investigatory process. This is not enough to show that CFD's reason for suspending the plaintiff was pretextual.

**Conclusion**
For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

Enter:

_David H. Coar_
David H. Coar
United States District Judge

Dated: June 3, 2002